**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **TODD FRANCE,** | : | |
| **Petitioner** | : | **No. 1:20-cv-01443** |
| | : | |
| **v.** | : | **(Judge Kane)** |
| | : | |
| **JASON BERNSTEIN,** | : | |
| **Respondent** | : | |

**MEMORANDUM**

Presently before the Court are: (1) Petitioner Todd France ("Petitioner")'s motion to confirm the arbitration award entered in the National Football Players Association ("NFLPA") arbitration captioned Bernstein v. France, NFLPA 19-CA-4 (Doc. No. 40); and (2) Respondent Jason Bernstein ("Respondent")'s cross-motion to vacate the award (Doc. No. 44). For the reasons stated herein, the Court will grant Petitioner's motion, deny Respondent's motion, and confirm the arbitration award.

## I. BACKGROUND

This dispute is between sports agents who represent players in the National Football League ("NFL"). As noted above, Petitioner seeks to confirm the arbitration award entered in his favor in the arbitration captioned Bernstein v. France, NFLPA 19-CA-4. Respondent's motion asserts that the previous arbitration proceeding between the parties was marred by perjurious testimony. On that basis, Respondent seeks to vacate the result of those proceedings.

### A. Factual Background

Respondent is the majority owner of Clarity Sports International LLC ("Clarity"), a full-service sports management company. (Doc. No. 43-1 at 7.) Respondent formerly represented Kenny Golladay, a wide receiver for the Detroit Lions. (Id. at 8.) Petitioner is an agent with CAA Sports, LLC ("CAA"), a competitor of Clarity. Petitioner currently represents Golladay.

(Id. at 7.) Because the parties both represent NFL players in contractual negotiations, they are subject to certain regulations promulgated by the NFL Players' Association ("NFLPA").[1] (Id. at 4-6.)

The instant dispute began with Respondent's allegations that Petitioner "poached" Golladay by wrongfully inducing Golladay to fire Respondent and hire Petitioner. (See id.) Specifically, Respondent claims that Petitioner violated the NFLPA Regulations by (1) initiating contact with Golladay while Respondent and Golladay were parties to a Standard Representation Agreement, and (2) inducing or encouraging Golladay to switch agents by arranging for Golladay to attend a private autograph-signing event (the "Signing Event")—a "thing of value" under the NFLPA Regulations. (See Doc. No. 43-1 at 4-6.)

---

[1] These rules require disputes between sports agents to be resolved in the NFLPA arbitration forum. (Doc. No. 43-1 at 5-6.) Additionally, Section 3.B. of the NFLPA Regulations prohibits agents from, among other things:

> (2) Providing or offering money or any other thing of value to any player or prospective player to induce or encourage that player to utilize his/her services;
>
> (21)(a) Initiating any communication, directly or indirectly, with a player who has entered into a Standard Representation Agreement with another [agent] and such Standard Representation Agreement is on file with the NFLPA if the communication concerns a matter relating to the:
>
> > (i) Player's current [agent];
> >
> > (ii) Player's current Standard Representation Agreement;
> >
> > (iii) Player's contract status with any NFL club(s); or
> >
> > (iv) Services to be provided by [the] prospective [agent] either through a Standard Representation Agreement or otherwise.

(Id. at 4-5). The Regulations provide, however, that "[i]f a player, already a party to a Standard Representation Agreement, initiates communication with [an agent] relating to any of the subject matters listed in Section 3.B.(21)(a)[,] the [agent] may continue communications with the Player regarding any of those matters." (Id. at 5.)

### B. Procedural Background

#### 1. The Arbitration Proceedings

As required by the NFLPA Regulations, Respondent filed a grievance against Petitioner in the NFLPA arbitration forum on July 1, 2019. (Doc. No. 1-4.) Respondent alleged that Petitioner tortiously interfered with the contract of representation between Respondent and Golladay. (See id.; see also Doc. No. 45 at 2.) Roger P. Kaplan, Esquire ("Arbitrator") presided over hearings on November 19, 2019 and December 12, 2019. (Doc. No. 41 at 4.) During the proceedings, the parties had an opportunity to examine and cross-examine witnesses and present evidence in support of their respective positions. (Doc. No. 43-1 at 3.) The Arbitrator found that Petitioner did not violate Section 3.B.(2) and/or Section 3.B.(21) of the NFLPA Regulations. (Id. at 24.)

Several witnesses testified during the arbitration proceedings. Kenneth Saffold, Jr., Golladay's "mentor and general advisor," testified that he first told Golladay about a charity bowling event hosted by one of Golladay's teammates (the "Charity Event") that would be held on September 24, 2018. (Id. at 8-9.) Saffold testified that he encouraged Golladay to attend the Charity Event to meet people, network, and build Golladay's brand. (Id.) Petitioner also testified at the hearing. (Id. at 10.) Petitioner "forcefully and repeatedly denied initiating contact with Golladay" at the Charity Event; instead, he maintained that Golladay approached him, asked whether he was an agent with CAA Sports, asked for his telephone number, and mentioned that he was planning to "make an agent move." (Id.) With respect to the Signing Event of January 21, 2019, Petitioner testified that: he did not arrange the Signing Event; he was unaware of the Signing Event when it occurred; and he never communicated with Golladay, Golladay's mother, or Saffold about the Signing Event. (Id. at 12.) Petitioner also stated that he

did not use the Signing Event as a means to induce or encourage Golladay to terminate Respondent. (Id.) The Arbitrator credited this testimony.

Several witnesses, including Golladay, his mother, and Pennsylvania memorabilia dealers failed to appear at the arbitration hearing, despite subpoenas from the Arbitrator. (Id. at 15-16.) Notably, Respondent never sought judicial enforcement of these subpoenas.

The Arbitrator issued his written opinion in late March of 2020. In that opinion, the Arbitrator made the following factual findings:

> The evidence established that Golladay initiated contact with Petitioner. The record demonstrated that Petitioner repeatedly and consistently testified that Golladay initiated contact with him (Petitioner) at the Charity Event. Further the record made clear that Petitioner attended the Charity Event for legitimate reasons, reasons that had nothing to do with soliciting to represent Golladay or any other player. Specifically, Petitioner was there because of the involvement of another player-client with the Charity Event.
>
> The evidence also established that Golladay had been considering changing his representation even before he met Petitioner and that Golladay was favorably impressed by Petitioner at that first meeting.

(Id. at 18-19.) In light of these findings, the Arbitrator ruled that Respondent failed to meet his burden of proof and that Petitioner was not in violation of NFLPA Regulations. (Id. at 18.)

### 2. The Petitions to Confirm and Vacate

On April 24, 2020, Petitioner filed a petition to confirm the Arbitrator's award in the United States District Court for the Eastern District of Virginia. (Doc. No. 1.) Respondent subsequently filed a motion to vacate the award. (Doc. No. 27.) Both filings were fully briefed in that court (Doc. Nos. 5, 16, 23, 28, 34, 35); however, venue was transferred to this Court (Doc. No. 39) at the urging of Respondent who claimed that his separate action against Pennsylvania sports memorabilia dealers for tortious interference[2] contains information "highly

---

[2] See Clarity Sports Int'l LLC v. Redland Sports, 1:19-cv-00305-YK (hereafter "Clarity Sports").

relevant" to whether the award should be vacated (Doc. No. 15 at 3).[3] Following transfer to this Court, the parties re-filed the instant cross-motions (Doc. Nos. 40, 44) to confirm and vacate the Arbitrator's award, respectively. Having been fully briefed (Doc. Nos. 41, 42, 43, 45, 46, 47, 61-1), the motions are ripe for disposition.

## II. LEGAL STANDARD

The Federal Arbitration Act ("FAA") stringently limits courts' ability to vacate arbitration awards, as part of a comprehensive statutory scheme favoring arbitration. See Hall Street Assocs. v. Mattel, Inc., 552 U.S. 576, 581 (2008). Indeed, judicial review of an arbitration award under the FAA is "among the narrowest known to the law." See Long John Silver's Rests., Inc. v. Cole, 514 F.3d 345, 349 (4th Cir. 2008). Federal courts are therefore "extremely deferential" to arbitrators' awards and may vacate such awards "only under exceedingly narrow circumstances." See Dluhos v. Strasberg, 321 F.3d 365, 370, 372 (3d Cir. 2003). Under the FAA, a court may vacate an arbitration award only if "(1) it 'was procured by corruption, fraud, or undue means;' (2) the arbitrator was 'partial[ ] or corrupt[ ];' (3) the arbitrator unjustifiably refused to postpone the hearing, refused to consider 'evidence pertinent and material to the controversy,' or engaged in any other 'misbehavior' that prejudiced the rights of a party; or (4) the arbitrator 'exceeded [his or her] powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.'" See, e.g., Edmondson v.

[3] Respondent proffered this same argument before the Arbitrator who correctly noted: "Those proceedings are not at issue herein. This case is decided solely on the evidence and arguments presented at the arbitration hearing and via post-hearing briefs." (Doc. No. 43-1 at 17.)

Lilliston Ford Inc., 722 F. App'x 251, 254 (3d Cir. 2018) (not precedential) (quoting 9 U.S.C. § 10).[4]

## III. DISCUSSION

Respondent makes two principal arguments to this Court: (1) that the Arbitrator's award was procured by fraudulent testimony; and (2) that the Arbitrator "refused to consider 'evidence pertinent and material to the controversy'" by not compelling Golladay to testify at the arbitration hearing.[5] (Doc. No. 45 at 1-2.) The Court considers each of these arguments in turn.

### A. Respondent's Allegation That the Award Was Procured by Fraud

#### 1. Applicable Legal Standard

It is well established that to vacate an arbitration award on the basis of fraud, the party moving for vacatur must demonstrate: (1) that the fraud occurred, by clear and convincing

---

[4] In addition to the FAA, Respondent mentions the Virginia Arbitration Act ("VAA"), although he makes no argument for vacatur pursuant to the VAA separate from his arguments under the FAA. (Doc. Nos. 44, 45.) The Court notes that the VAA prescribes a virtually identical standard of review to the FAA. See VA. CODE ANN. § 8.01-581.010.

[5] The Court notes its disappointment with certain acrimonious, malintent-attributing statements made by both parties' counsel in this matter. See, e.g., (Doc. No. 45 at 13 (arguing that "the untruthful denials asserted by counsel . . . are not surprising")); (id. at 19 (asserting that the allegedly false testimony at the hearing "was not an innocent mistake on France's part. Nor was it an innocent mistake by his attorneys")); (id. at 27 (stating that "[t]rue to form, France's testimony directly contradicted Saffold's testimony")); (id. at 28-29 (accusing Petitioner and his attorneys of purposely "abus[ing] the discovery process")); (Doc. No. 46 at 31 (labeling Respondent's argument "disingenuous")). The Code of Professional Conduct of the United States District Court for the Middle District of Pennsylvania compels all attorneys who appear before this Court to "strive . . . [to] treat with civility and respect the lawyers, clients, [and] opposing parties" involved in the action. See M.D. PA. LOCAL RULES OF COURT, Appendix C, ¶ 2; see also PA. RULES OF PROF'L CONDUCT Preamble, ¶ 9 (noting attorneys' obligation "zealously to protect and pursue a client's legitimate interests . . . while maintaining a professional, courteous and civil attitude toward all persons involved in the legal system"). The Court acknowledges and is sensitive to the fact that the line between zealous advocacy and indecorous conduct can sometimes appear nebulous. But here, that line was crossed. Loose attributions of malintent, acrimonious finger-pointing, and ad hominem attacks have no place in this Court.

evidence; (2) that the fraud was not discoverable by due diligence before or during the arbitration hearing; and (3) that the fraud materially related to an issue in the arbitration. See, e.g., Odeon Cap. Grp. LLC v. Ackerman, 864 F.3d 191, 196 (2d Cir. 2017); Karaha Bodas Co., L.L.C. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara, 364 F.3d 274, 306 (5th Cir. 2004); Pontiac Trail Med. Clinic, P.C. v. PaineWebber, Inc., No. 9201972, 1993 WL 288301, at *3 (6th Cir. July 29, 1993) (not precedential); Gingiss Int'l, Inc. v. Bormet, 58 F.3d 328, 333 (7th Cir. 1995); LaFarge Conseils et Etudes, S.A. v. Kaiser Cement & Gypsum Co., 791 F.2d 1334, 1339 (9th Cir. 1986); Bonar v. Dean Witter Reynolds, Inc., 835 F.2d 1378, 1383 (11th Cir. 1988). The applicable test for "fraud" is the common-law definition as modified by the FAA; under this standard, the impropriety of the conduct must be more egregious than normal, due to the courts' diminished power of judicial review. See, e.g., Pac. & Arctic Ry. & Navigation Co. v. United Transp. Union, 952 F.2d 1144, 1148 (9th Cir. 1991) (holding that "because of the strong federal policy favoring arbitration," a greater level of improper conduct is required to vacate an award for fraud).

**2. Parties' Arguments**

Respondent argues that the keystone of the Arbitrator's decision was his finding that Petitioner "had absolutely nothing to do with Golladay's attendance at the Signing Event." (Doc. No. 45 at 1 (quoting Doc. No. 23-1 at 19-20)). In support of vacatur, Respondent points to newly discovered evidence that was not presented to the Arbitrator. (Id. at 2.) This evidence consists of: (1) a single text message, sent three days before the Signing Event between the sports memorabilia dealers who organized the event that appears to discuss the dealers' plan for picking up Golladay at the airport, noting that one of the dealers expects "Kenny/mom/Todd CAA" to be present at the airport (Doc. No. 45-8 at 8); (2) an email from Petitioner's coworker

Jake Silver to Petitioner on January 8, 2019 with the contract for the Signing Event attached (Doc. No. 64, Exh. B); and (3) an email from Petitioner to Kenny Golladay attaching the contract for the Signing Event for Golladay's signature (id., Exh. A). Respondent repeatedly refers to the text message as "bombshell evidence" conclusively proving that "Petitioner testified untruthfully in the arbitration about the central issue before the Arbitrator." (Doc. No. 45 at 1, 2.) Respondent further asserts that "[t]he newly acquired emails are direct, conclusive evidence" that "[b]oth France and Silver have perjured themselves and have been caught red handed." (Doc. No. 61-1 at 3-4.) Petitioner, in response, argues that Respondent has not met his burden to prove that the award was procured by fraudulent testimony. (Doc. No. 46 at 7-8.)

**3. Whether the Court Should Vacate the Arbitration Award Due to Fraud**

Respondent has failed to meet the exceedingly demanding evidentiary standard necessary to vacate an arbitration award on the basis of fraud. As noted supra, arbitration awards are generally presumed valid, review is "extremely deferential," and vacatur is appropriate only in "exceedingly narrow" circumstances. See Dluhos, 321 F.3d at 370. Further, the Court's role in reviewing the outcome of arbitration proceedings "is not to correct factual or legal errors made by an arbitrator." See Major League Umpires Ass'n v. Am. League of Pro. Baseball Clubs, 357 F.3d 272, 279 (3d Cir.2004). Rather, where the parties have agreed to submit their claims to arbitration, "it is the arbitrator's view of the facts . . . that they have agreed to accept." See Tanoma Mining Co. v. Loc. Union No. 1269, United Mine Workers of Am., 896 F.2d 745, 747 (3d Cir. 1990); see also Brentwood Med. Assocs. v. United Mine Workers of Am., 396 F.3d 237, 241 (3d Cir. 2005), as amended (Mar. 17, 2005) ("[I]t is [the Court's] duty to resist the urge to conduct de novo review of the award on the merits."); Dluhos, 321 F.3d at 369 ("[T]his Court has essentially concluded that the essence of arbitration . . . is that, when the parties agree to

submit their disputes to it, they have agreed to arbitrate these disputes through to completion, i.e. to an award made by a third-party arbitrator" (internal citation omitted)). The benefits of arbitration, such as expedited resolution of claims, decreased fees, and the opportunity to have claims evaluated by industry experts, "do not come without risk, and 'the possibility of receiving inconsistent or incorrect rulings without meaningful appellate review of the merits is one of the risks such parties must accept when they choose arbitration over litigation.'" See Akers Nat. Roll Co. v. United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union, 712 F.3d 155, 161 (3d Cir. 2013) (citing Major League Umpires Ass'n, 357 F.3d at 289). It is well-established that, having accepted the risks associated with arbitration, parties are not entitled to a second bite at the apple from the federal courts to avoid the results of an arbitration proceeding because they received an unfavorable outcome. See id.

That is precisely what Respondent seeks to do here. Respondent has doggedly pursued his theory that Petitioner violated NFLPA Regulations and "picked off" his client. Because the Arbitrator did not rule in his favor, Respondent now asks this Court to comb through an entirely separate action and consider evidence that was not before the Arbitrator. But the facts are clear—Respondent presented his theory of the case to the Arbitrator, including his belief that Petitioner's testimony was untrue. Respondent had full opportunity during the arbitration hearings to test Petitioner's representations that he had no knowledge of any prohibited inducements to Golladay, and the Arbitrator observed and assessed Petitioner's credibility in offering these denials. Respondent failed to present any evidence of Petitioner's alleged involvement with the Signing Event at that time. This is the backdrop on which the Court must now rule.

Even if the Court were to find that the text message and emails proffered by Respondent in connection with his motion to vacate demonstrated that Petitioner perjured himself, that would not per se require vacatur. As discussed supra, Respondent is also required to demonstrate that the fraud was not discoverable by due diligence before or during the arbitration hearing. See Int'l Bhd. of Teamsters, Loc. 701 v. CBF Trucking, Inc., 440 F. App'x 76, 78 (3d Cir. 2011). Respondent has proffered no satisfactory explanation for why any of the evidence he now submits to this Court, or, at the very least, testimony from anyone with personal knowledge of the Signing Event, was not discoverable during the arbitration hearing. See Portis v. Ruan Transp. Mgmt. Sys., Inc., No. 7:15-cv-00118, 2016 WL 7388403, at *3 (W.D. Va. Dec. 19, 2016) (upholding an arbitration award because "[e]ven assuming that [witnesses] committed perjury at the evidentiary hearing, it cannot be said that [the party seeking vacatur] did not have the opportunity to present evidence or argument to the arbitrator regarding their allegedly fraudulent conduct"). Respondent issued subpoenas under the Arbitrator's name to eight (8) third parties, including Golladay and the memorabilia dealers, prior to the hearings in the arbitration. (Doc. No. 46-2.) The fact that Respondent failed to seek judicial enforcement of these subpoenas pursuant to the clearly established procedures of 9 U.S.C. § 7, a failure for which Respondent has also provided no explanation, is not the fault of Petitioner or the Arbitrator. The Court declines to reward Respondent's lack of due diligence in this case by combing through the record in a separate action to second-guess a well-reasoned arbitration decision, nor has Respondent provided the Court with a reason why it should. See Int'l Bhd. of Teamsters, Loc. 701 v. CBF Trucking, Inc., No. 09-cv-5525, 2010 WL 2400400, at *4 (D.N.J. June 10, 2010) (declining to vacate arbitration award due to fraud because the party moving for vacatur was aware of potential fraud during the arbitration and failed to present witnesses or

other evidence to contradict inconsistent statements), aff'd, 440 F. App'x 76 (3d Cir. 2011). Accordingly, the Court concludes that Respondent has failed to satisfy the taxing evidentiary burden prescribed by Section 10(a)(1) to prove that the arbitration award was procured by fraud and will not vacate the award on this basis.

### B. Respondent's Allegation That the Arbitrator Committed Misconduct by Refusing to Hear Pertinent and Material Evidence

#### 1. Applicable Legal Standard

Vacatur of an arbitration award under Section 10(a)(3) is appropriate only where the arbitrator committed actual "misconduct . . . in refusing to hear evidence pertinent and material to the controversy." 9 U.S.C. § 10(a)(3) (emphasis added). In order for a court to grant vacatur, "the arbitrator's 'error must be one that is not simply an error of law, but [one] which so affects the rights of a party that it may be said that he was deprived of a fair hearing.'" See Bellantuono v. ICAP Secs. USA, LLC, 557 F. App'x 168, 176 (3d Cir. 2014) (not precedential) (quoting Newark Stereotypers' Union No. 18 v. Newark Morning Ledger Co., 397 F.2d 594, 599 (3d Cir. 1968)).

#### 2. Parties' Arguments

Respondent argues that the Arbitrator's award "should be vacated because the Arbitrator should have allowed [Respondent] to depose Golladay and/or should have insisted on hearing testimony from Golladay live at the [arbitration] hearing." (Doc. No. 45 at 27.) In response, Petitioner argues that Respondent was not denied a fair hearing because Respondent failed to avail himself of the remedies prescribed in 9 U.S.C. § 7. (Doc. No. 46 at 11-12.)

### 3. Whether the Court Should Vacate the Award Due to Arbitrator Misconduct

Respondent's first argument—that the Arbitrator committed misconduct by not "allow[ing] [Respondent] to depose Golladay"—is meritless. It is well established that "[t]he statutory phrase 'refusing to hear evidence' concerns the conduct of the hearing, not the conduct of discovery. Indeed, nothing in the Federal Arbitration Act requires an arbitrator to allow any discovery." See Hyatt Franchising, L.L.C. v. Shen Zhen New World I, LLC, 876 F.3d 900, 902 (7th Cir. 2017) (emphasis in original); see also Century Indem. Co. v. Certain Underwriters at Lloyd's, London, 584 F.3d 513, 557 (3d Cir. 2009) (explaining that vacatur under Section 10(a)(3) is warranted "only" where the arbitrator's failure to consider testimony at the hearing renders the hearing fundamentally unfair). The Court accordingly rejects Respondent's arguments on this score.

Similarly, the plain language of the FAA forecloses Respondent's second argument—that the Arbitrator committed misconduct by not compelling Golladay's attendance at the hearing. Section 7 of the FAA unambiguously prescribes the procedure for compelling a witness's attendance. An arbitrator may issue a summons requesting that a witness appear at the hearing along with "any book, record, document, or paper which may be deemed material as evidence in the case." See 9 U.S.C. § 7. But an arbitrator has no inherent enforcement authority; therefore, if the witness refuses to show up, Section 7 permits a party to file a motion in federal district court to compel the witness to testify. See id. Respondent, however, never sought to compel the testimony of Golladay or anyone else by filing such a motion to enforce the Arbitrator's subpoena in this action. The Arbitrator cannot have committed misconduct by failing to exercise a power he never had. Furthermore, the Court is not persuaded that Respondent was "deprived of a fair hearing" in light of his choice not to seek judicial enforcement of the subpoenas.

Respondent's arguments under Section 10(a)(3) contravene the plain language of the FAA; accordingly, the Court will not vacate the arbitration award on this ground.

## IV. CONCLUSION

In light of the foregoing, the Court will grant Petitioner's motion to confirm the arbitration award (Doc. No. 40) and deny Respondent's motion to vacate the award (Doc. No. 44). An appropriate Order follows.